Richard D. ANHELUK, Plaintiff
and Appellee,

v.

Joseph H. KUBIK, Defendant
and Appellant.

Civ. No. 10900.

Supreme Court of North Dakota.

Sept. 4, 1985.

Freed, Dynes, Reichert & Buresh, Dickinson, for plaintiff and appellee; argued by George T. Dynes, Dickinson.

Kubik, Bogner & Ridl, Dickinson, for defendant and appellant; argued by Joseph H. Kubik, Dickinson.

GIERKE, Justice.

Joseph H. Kubik appeals from a county court judgment in the amount of $2,383.99 in a contract action for court reporting services rendered by Richard D. Anheluk. We affirm in part and reverse in part.

The underlying action in which Anheluk rendered court reporting services was a quiet title and slander of title action entitled *Anderson Petroleum, Inc. v. John P. and Darlene V. Sikorski* and was filed in the Southwest Judicial District of North Dakota. The Sikorskis had retained John B. Stone of Denver, Colorado, to defend them in the action, and Stone contacted Kubik to act as resident counsel for the action. During the course of that action, pretrial depositions of the Sikorskis were taken by Anheluk in April 1982, at Dickinson, North Dakota. Anheluk was aware that several depositions in that case were scheduled to be taken on May 14, 1982, in Denver, Colorado, and he approached Kubik and requested that Kubik consider using him as the court reporter for those depositions because he wanted to go to Denver on a vacation and he was willing to do the depositions for the standard reporting fees without charging traveling expenses. Kubik contacted Stone and they

agreed that Anheluk would take the Denver depositions. Kubik's office notified Anheluk that he could take the Denver depositions. Anheluk subsequently provided court reporting services for those depositions and billed Stone $815.90 for his services.

In April 1983, the *Anderson Petroleum, Inc. v. Sikorski* case came to trial. During the course of the trial, John Sikorski became ill and informed the court that he was unable to continue with the trial as scheduled. The court granted a continuance and also ordered sua sponte that John Sikorski's deposition be taken in order to preserve evidence for trial and that Sikorski be responsible for the costs incurred in taking the deposition. Counsel for Anderson Petroleum served Kubik with a Notice of Deposition and arranged to have Anheluk take the deposition. Sikorski's deposition was taken by Anheluk on June 1 and 2, 1983, in Dickinson, North Dakota, and Anheluk billed Kubik $1264.65 for that deposition. The Sikorskis subsequently went through bankruptcy and the bills for the May 1982 depositions in Denver and Sikorski's June 1983 deposition were not paid.

Anheluk then commenced the instant action against Kubik in small claims court, and Kubik removed it to county court. After a bench trial, the county court ordered judgment against Kubik for Sikorski's June 1983 deposition and dismissed Anheluk's claim for services rendered for the Denver depositions. Anheluk filed a motion to reconsider his claim for the May 1982 deposition, and the court, after noting that Kubik had failed to resist Anheluk's motion,[1] granted Anheluk's claim for the May 1982 depositions. Judgment was entered against Kubik in the amount of $2383.99 for the costs of the May 1982 and June 1983 depositions.

The underlying issue raised by this appeal is whether an attorney or the client is liable for court reporter costs incurred in the course of a lawsuit.

The county court followed the rule that an attorney is personally liable to third parties for litigation expenses unless the attorney expressly and specifically disclaims liability for those expenses in advance of or prior to the services being rendered.

Kubik contends that the county court erred in following this rule of law and should have followed general agency law that an attorney, as an agent of the client, is not personally liable on contracts made for the disclosed principal, in the absence of an express agreement by the attorney to be bound.

Anheluk contends that the county court correctly applied the better rule that an attorney is liable for litigation expenses unless he specifically disclaims responsibility for those expenses.

The question of an attorney's personal liability for services obtained in aid of litigation for a named client absent an express agreement on the subject has been considered in other jurisdictions and there exists a split of authority as to the proper resolution of this issue. See Annot., 15 A.L.R.3d 531 (1967). Some jurisdictions refuse to hold the attorney personally liable on the general agency rule that an agent, the attorney, who is acting for a disclosed principal, the named client, should not be liable for services contracted on behalf of the client. See Annot., *supra*, § 3, pp. 536–538.

Other jurisdictions have modified this rule of agency and concluded that, in the absence of an express disclaimer of responsibility, an attorney requesting services in connection with litigation is treated as a

---

**1.** Rule 3.2(d), NDROC, provides as follows:

"*(d) Failure to File Briefs.* Failure to file briefs or to request the taking of testimony or oral argument within the prescribed time subjects a motion to summary ruling. Failure to file a brief by the moving party is an admission that, in the opinion of counsel, the mo-

tion is without merit. Failure to file a brief by the adverse party is an admission that, in the opinion of counsel, the motion is meritorious."

See *Martinson Bros. v. Hjellum,* 359 N.W.2d 865 (N.D.1985); *Neuner v. Ballantyne,* 336 N.W.2d 342 (N.D.1983).

principal and held personally liable for expenses for those services. See Annot., *supra*, § 4, pp. 538–540. The rationale underlying this rule is that the attorney-client relationship differs from the general agency relationship because the attorney-client relationship is subject to an established code of professional responsibility governing members of the Bar, and the attorney, not the client, is in charge of the litigation and determines the services necessary to promote the best interests of the litigation. See *Judd & Detweiler v. Gittings*, 43 App. D.C. 304 (1915); *Molezzo Reporters v. Patt*, 94 Nev. 540, 579 P.2d 1243 (1978); *Burt v. Gahan*, 351 Mass. 340, 220 N.E.2d 817 (1966); *Monick v. Melnicoff*, 144 A.2d 381 (D.C.Mun.App.1958); *Roberts, Walsh & Co. v. Trugman*, 109 N.J.Super. 594, 264 A.2d 237 (1970); *Brown & Huseby, Inc. v. Chrietzberg*, 242 Ga. 232, 248 S.E.2d 631 (1978).

The rationale for this rule was perhaps best stated in *Judd & Detweiler v. Gittings*, 43 App.D.C. at 310–311:

"While it is true that an attorney is the agent of his client, the relation between them, we think, is such that it calls for some modification of the general rule which the law recognizes as existing between principal and agent. In ordinary transactions, the agent is subordinate to the principal, the principal standing out as the real actor, and the agent merely as a subordinate representative. But the relation between attorney and client is different. The attorney has complete charge of the litigation, is so recognized by the court, and, as such, dominates in all matters pertaining to the conduct of the litigation. 'While in one sense the client is the principal and the attorney the agent, and while the attorney is professionally and constantly acting for clients, whose names from the records of the courts and other means of publicity are almost always known or may be so, yet there are peculiarities in his case which make it necessary to apply to it with some qualification the general principles of agency. In most cases of agency the principal is what the name implies,—the leading person in the transaction. The agent is, as the term implies, a mere subordinate, important only as the representative of the principal; often representing only one principal. An attorney at law, on the other hand, occupies a position of recognized importance in itself, not infrequently of great prominence before the public, in which he often has a large number of clients, his relations to whom are full of detail, and who are little noticed by the public.' *Heath v. Bates*, 49 Conn. 342, 44 Am. Rep. 234. The attorney usually determines what steps are to be taken in his client's interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client."

We believe the rationale underlying the "disclaimer" rule, as set forth in the above quotation, is persuasive. That rule is also supported by the practical basis of keeping the litigation process in motion and the possible delays in that process if court reporters have to look directly to the client for satisfaction for their services. This rationale is further supported by the custom or practice in North Dakota of paying for court reporter services for depositions which Anheluk testified was as follows:

"A. Yes. Okay, the way I do it, and the way I did it when I was working with Emineth and Associates out of Bismarck, which is a large free lance firm, whoever sets up the deposition and does the questioning, we bill them for the original and one, and then the opposing side would be billed for one copy of whatever he orders. It always goes to the attorney. We never bill a client direct. We don't even deal with the client. All negotiations are through the attorney.

\* \* \* \* \* \*

"Q. Are you familiar with the practice of any of the other Court Reporters in the State?

"A. That practice that I just said is a standard practice anywhere.

"Q. Even out of the state?

"A. Yes."

This practice was substantiated by another court reporter and an attorney.

■ We hold that when an attorney requests goods or services in connection with litigation for a named client, the law will consider the attorney as the principal and will imply a promise on the part of the attorney to pay the reasonable expenses for the goods or services unless the attorney expressly disclaims liability.

We must now apply this rule to the instant case. Kubik contends that he was not in charge of the litigation at the time of the May 14, 1982, depositions in Denver and that he was merely co-counsel with Stone, who was Sikorski's chief attorney. Kubik also contends that Stone ordered Anheluk's services for the May 14, 1982, depositions that he, Kubik, was merely a conduit for the order.

The county court made the following finding of fact:

"That rule applied to the factual situations in this case leads the Court to conclude that Attorney Kubik is liable for the costs of the deposition taken in Denver, Colorado. Kubik was the counsel for Sikorski as far as Anheluk was concerned and Anheluk has a right to look to Kubik for the payment of his fees. Kubik made the arrangements with Anheluk and Kubik did not at that time disclaim his personal responsibility for the costs of the Denver deposition."

■ That finding is not clearly erroneous under Rule 52(a), N.D.R.Civ.P., and supports the lower court's decision that Kubik was liable for the Denver deposition because he made the arrangements for Anheluk to do that deposition. Accordingly, we conclude that the lower court properly determined that Kubik was responsible for

payment for the May 14, 1982, deposition in Denver.

Kubik contends that he should not be responsible for the June 1 and 2, 1983, deposition of Sikorski because the deposition was taken pursuant to court order and arrangements for the deposition were made by counsel for Anderson Petroleum, and the discussion at the end of the deposition indicates that Sikorski would be personally responsible for the deposition.

At the conclusion of Sikorski's June 1 and 2 deposition, the following transpired:

"MR. MUELLER: Okay, could we have some kind of agreement on the payment of the court reporter in view of the Court's Order in requiring Mr. Sikorski to pay the costs?

"MR. KUBIK: I don't know if that's our—it is ordered by the Court that we pay it. I don't know why we have to agree with you to pay it.

"MR. SHERMAN: Well, I hired the reporter. That's what we're talking about.

"MR. KUBIK: Oh, that's fine. Mr. Sikorski understands it's his obligation.

"MR. SHERMAN: So you'll be paying him direct, and we don't include that in our statement?

"MR. KUBIK: Yeah, that would be fine.

"MR. MUELLER: So it would be okay if you just send us a copy of the deposition, but send the bill for both our copy and whatever they require directly to them.

"MR. SHERMAN: We're entitled to two copies, one each.

"MR. MUELLER: Yes. Is that agreeable with everybody.

"MR. KUBIK: Yup.

"THE WITNESS [Sikorski]: In what way?

"MR. KUBIK: What?

"THE WITNESS: In what way is that agreeable?

"MR. KUBIK: Well, it's agreeable with me if this is the way it's agreeable.

"THE WITNESS: I see."

In this instance, the Court ordered Sikorski's deposition with instructions that Sikorski would bear all costs and expenses of the deposition. The arrangements for Sikorski's deposition were made by counsel for Anderson Petroleum and were not made by Kubik. These circumstances distinguish this case from the case in which the attorney who requests the goods or services is the attorney who is responsible for the costs and expenses unless there is a specific disclaimer. Our research has not revealed a case with a factual situation similar to the instant case.

However, in *Molezzo Reporters v. Patt, supra,* a district court ordered reporting without specifying responsibility for payment. Attorney Patt requested Molezzo Reporters to handle the reporting. The Nevada Supreme Court stated that it had found no cases regarding an attorney's liability for reporting costs ordered by the court without specification for payment and in those circumstances it would appear to be fair for all counsel and their clients to be jointly and severally liable to the reporter. We believe that that case recognizes the distinguishing factor of a court ordered deposition and the responsibility for payment.

However, the instant case goes one step further than *Molezzo Reporters v. Patt, supra,* because, in this case, the court order directed Sikorski to be responsible for the costs of the deposition. Thus, there is an explicit indication that Sikorski and not Kubik or any other attorney was responsible for payment of the costs and expenses of the deposition. Furthermore, Kubik did not make arrangements with Anheluk to take the deposition. We do not believe the discussion among counsel at the end of Sikorski's deposition can be fairly construed as shifting the responsibility to Kubik personally for payment of the costs and expenses of the depositions. This is especially true in view of the specific court order which undercuts the rationale that the attorney is in charge of the litigation and determines the services necessary to promote the best interests of the litigation.

Under these circumstances, we believe that Kubik is not responsible to Anheluk for the costs and expenses of Sikorski's deposition.

Accordingly, we affirm that portion of the judgment dealing with the Denver depositions and reverse that portion of the judgment dealing with Sikorski's deposition.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.