# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-670

**SMART DOCUMENT SOLUTIONS, LLC**

**VERSUS**

**MICHAEL B. MILLER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
CROWLEY CITY COURT
PARISH OF ACADIA, NO. 20920
HONORABLE T. BARRETT HARRINGTON, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Michael B. Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
Counsel for Defendant/Appellant:
    Michael B. Miller

Brian F. Blackwell
Blackwell & Associates
9270 Siegen Lane, Suite 201
Baton Rouge, LA 70810
Counsel for Plaintiff/Appellee:
    Smart Document Solutions, LLC

**PICKETT, Judge.**

The defendant, Michael B. Miller, appeals a judgment of the trial court awarding the plaintiff, Smart Document Solutions (SDS), LLC, $4,194.76 plus legal interest from date of judicial demand, for services rendered. We affirm the judgment of the trial court.

## FACTS

The defendant, an attorney, subpoenaed medical records from a number of health care providers in the course of his practice. The plaintiff, as agent for the health care providers, answered the subpoenas, supplied the records requested by the defendant, and invoiced him for its service. The defendant accepted the records. Subsequently, the defendant refused to pay the plaintiff's invoices, claiming that he had not issued subpoenas to the plaintiff, but, rather to the various health care providers which used the plaintiff's services. The plaintiff filed suit and was awarded $4,194.76 plus legal interest from the date of judicial demand and all costs. The defendant appeals.

## LAW AND DISCUSSION

The trial of this matter took place on February 27, 2007. Although properly noticed, the defendant/appellant failed to appear. The plaintiff proceeded to put on its case. The first witness called was Ms. Lynette Nickel, the clerk of the Crowley City Court, who testified that she was in court the last time the case was called for trial. She stated that the defendant was also present; that the case was continued because the defendant had yet to file his answer; that, not only was the new date announced in open court, but that notice of the new trial date was prepared; and that

2

the notice, along with the plaintiff's Amended Petition and Interrogatories were served on the defendant.

The next witness called was Glenn Deville, the City Marshall, who was also in court when the case was continued. He remembered Mr. Miller being in the court when the new date was set and stated that he served the papers described by Ms. Nickel on the defendant, through his secretary, at the defendant's office.

The plaintiff then called Ms. Margaret Stevenson, the SDS Operations Director for north, central, and southwest Louisiana, along with north Mississippi and north Texas. Ms. Stevenson explained that medical providers contract with SDS to pull and copy subpoenaed records so that their own employees don't have to do so. She then identified individually each request (along with its supporting documentation) from Mr. Miller for medical records and the invoice sent to Mr. Miller for processing each request.

The defendant raises six specifications of error on appeal. Assignments 1, 4 and 5 all address one issue—does the plaintiff have a right of action against the defendant. Assignment number five also raises the issue of agency and whether Miller, as agent for his clients, should be held liable for the records he ordered in connection with the representation of his clients. We agree with the trial judge that the plaintiff has a right of action. As discussed more fully below, Margaret Stevenson, an officer of the plaintiff/company who dealt with such records as requested by the defendant in the normal course of business established that SDS was an agent of the medical providers, hired by them to answer requests for medical records. Furthermore, also as discussed below, SDS meets the definition of a "health care provider" as used in R.S. 13:3715.1(G). As either the agent of the health care

3

providers it represented or as a defined health care provider, SDS has the right to proceed against the defendant, to whom it provided goods and services.

As to the agency issue, the defendant claims that his clients owe the medical providers for the subpoenaed materials. Although this argument may appear to be technically correct, we find the special relationship between an attorney and his client does not support the defendants argument. We have not found an instance in which a Louisiana court has ruled on this issue, so we have looked to a number of foreign jurisdictions on which to base our conclusion. We are most impressed by the analysis and conclusion from the North Dakota Supreme Court:

> [T]he attorney-client relationship differs from the general agency relationship because the attorney-client relationship is subject to an established code of professional responsibility governing members of the Bar, and the attorney, not the client, is in charge of the litigation and determines the services necessary to promote the best interests of the litigation. *See Judd & Detweiler v. Gittings*, 43 App.D.C. 304 (1915); *Molezzo Reporters v. Patt*, 94 Nev. 540, 579 P.2d 1243 (1978); *Burt v. Gahan*, 351 Mass. 340, 220 N.E.2d 817 (1966); *Monick v. Melnicoff*, 144 A.2d 381 (D.C.Mun.App.1958); *Roberts, Walsh & Co. v. Trugman*, 109 N.J.Super. 594, 264 A.2d 237 (1970); *Brown & Huseby, Inc. v. Chrietzberg*, 242 Ga. 232, 248 S.E.2d 631 (1978).

> The rationale for this rule was perhaps best stated in *Judd & Detweiler v. Gittings*, 43 App.D.C. at 310-311:

>> "While it is true that an attorney is the agent of his client, the relation between them, we think, is such that it calls for some modification of the general rule which the law recognizes as existing between principal and agent. In ordinary transactions, the agent is subordinate to the principal, the principal standing out as the real actor, and the agent merely as a subordinate representative. But the relation between attorney and client is different. The attorney has complete charge of the litigation, is so recognized by the court, and, as such, dominates in all matters pertaining to the conduct of the litigation. 'While in one sense the client is the principal and the attorney the agent, and while the attorney is professionally and constantly acting for clients, whose names from the records of the courts and other means of publicity are almost

4

always known or may be so, yet there are peculiarities in his case which make it necessary to apply to it with some qualification the general principles of agency. In most cases of agency the principal is what the name imports,-- the leading person in the transaction. The agent is, as the term implies, a mere subordinate, important only as the representative of the principal; often representing only one principal. An attorney at law, on the other hand, occupies a position of recognized importance in itself, not infrequently of great prominence before the public, in which he often has a large number of clients, his relations to whom are full of detail, and who are little noticed by the public.' *Heath v. Bates*, 49 Conn. 342, 44 Am.Rep. 234. The attorney usually determines what steps are to be taken in his client's interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client."

. . . .

We hold that when an attorney requests goods or services in connection with litigation for a named client, the law will consider the attorney as the principal and will imply a promise on the part of the attorney to pay the reasonable expenses for the goods or services unless the attorney expressly disclaims liability.

*Anheluk v. Kubik*, 374 N.W.2d 67, 69-70 (N.D. 1985). This rule has been followed

in a number of other jurisdictions and we find it most accurately describes the

attorney-client relationship in this state. *See also St. Louis & Westervelt, Inc. V.*

*Giulini*, 673 N.Y.S.2d 820 (N.Y.Sup.Term 1998); *Cahn v. Fisher*, 805 P.2d 1040

(Ariz.App. 1990); *Sullivan v. Greene & Zinner, P.C.*, 689 N.Y.S.2d 180 (N.Y. City

Ct. 1999); and *McCullough v. Johnson*, 816 S.W.2d 886 (Ark. 1991).

The defendant also objects to what he characterizes as an impermissible

expansion of the pleadings and the introduction of hearsay evidence relying on

*Cunningham v. M & S Marine, Inc.*, 05-805 (La.App. 4 Cir. 1/11/06), 923 So.2d 770.

In *Cunningham* our colleagues of the fourth circuit stated:

> Confirming a default judgment is akin to a trial at which only the plaintiff is present [the situation in the case sub judice]. 1 Frank L. Maraist & Harry T. Lemmon, *Louisiana Civil Law Treatise: Civil Procedure* § 12.3 (1999). At such trial, the unopposed plaintiff must comply with a set of special, somewhat strict rules in proving his claim. 19 Frank L. Maraist, *Louisiana Civil Law Treatise: Evidence and Proof* § 2.9 (1999). The following special rules are pertinent to the present case.
>
> First, the plaintiff is confined to the facts and the theories pled in his petition; he may not expand his pleadings by introducing evidence [which does so] at the confirmation hearing. Thus, the plaintiff is precluded from obtaining a default judgment "different in kind from that demanded in the petition." La. C.C.P. art. 1703; *see Spear v. Tran*, 96-1490 (La.App. 4 Cir. 9/18/96), 682 So.2d 267. However, the Louisiana Supreme Court has held that "the pleadings which lead up to the demand, or prayer, upon which a default judgment is based are to be construed no more restrictively than pleadings suggestive of other judgments." *Royal Furniture Co. of Baton Rouge, Inc. v. Benton*, 260 La. 527, 532, 256 So.2d 614, 616 (1972).
>
> Second, "[b]ecause at a default confirmation there is no objecting party, . . . both plaintiff and the trial judge should be vigilant to assure that the judgment rests on admissible evidence" that establishes a prima facie case. George W. Pugh, Robert Force, Gerald A. Rault, Jr., and Kerry Triche, *Handbook on Louisiana Evidence Law* 639 (2003 ed.). As a corollary, "[e]xcept as authorized by the Code of Civil Procedure Article 1702, or evidence that fits within one of the exceptions provided by [the Louisiana Evidence] Code, hearsay evidence is inadmissible to confirm a default." *Id.*; *see* La. C.E. art. 1101(A)(providing that "[e]xcept as otherwise provided by legislation, the provisions of this Code shall be applicable to the determination of fact ... in proceedings to confirm a default.")
>
> Third, depending on the nature of the plaintiff's demand, Article 1702 sets forth several exceptions to the rule against the use of hearsay evidence at the confirmation hearing. One of those pertinent exceptions is that "[w]hen a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such [delictual] demand." La. C.C.P. art. 1702(B)(2).

*Id.* at 773. In such a case as the one sub judice, "an appellate court is restricted to determining whether the record contains sufficient evidence to prove a prima facie case." *Id.* at 773. We find the plaintiff proved a prima facie case.

The following is also well settled in Louisiana:

> La.C.C.P. art. 865 provides the general principle that pleadings are to be "construed as to do substantial justice." The Louisiana Supreme Court has recently interpreted that provision to require that pleadings be construed "to afford litigants their day in court, to arrive at truth, and to do substantial justice." *Kuebler v. Martin*, 578 So.2d 113, 114 (La.1991). Additionally, "pleadings are to be construed in the light of their allegations as a whole and not in view of a detached sentence or paragraph therein standing alone." *Mid-City Investment Co. v. Young*, 238 So.2d 780, 784 (La.App. 1st Cir.1970). Pleadings are to be construed liberally since technical rules of pleading no longer apply in Louisiana courts; thus, any doubt concerning the meaning of a pleading must be resolved in favor of the pleader in order to do substantial justice. *Boudreaux v. Allstate Finance Corp.*, 217 So.2d 439, 444 (La.App. 1st Cir.1968). From these statements, the following principle has been derived:
>
> > When the pleading in question is construed in its entirety and with all other matters occurring during trial which relate to the pleading, and it is more reasonable than not to conclude that the adverse party received fair notice and was fairly informed of the pleading's intended substantive result and procedure by which that result was intended to be accomplished, the pleading will be held to be legally effective and to satisfy the requirements of the Code of Civil Procedure which are raised in objection to the pleading.
>
> *Townsend v. Cleve Heyl Chevrolet-Buick, Inc.*, 318 So.2d 618, 623 (La.App. 2d Cir.1975).

*Nicholson & Loup, Inc. v. Carl E. Woodward, Inc.*, 596 So.2d 374, 385-86 (La.App. 4 Cir.), *writs denied*, 605 So.2d 1098 (La.1992).

The invoices introduced into evidence were verified by the testimony of Margaret Stevenson, an officer of the plaintiff/company who dealt with such records in the normal course of business. Thus, her testimony and the invoices were

7

admissible under the business records exemption to the hearsay rule. Furthermore, we do not find that either expanded the pleadings. The pleadings indicated that the defendant owed the plaintiff for medical records which were copied and sent to him at his request. The evidence and testimony substantiated that claim. The judgment obtained by the plaintiff was not "different in kind from that demanded in the petition" and was supported by the evidence and testimony. The plaintiff's amended petition, plus the evidence and testimony submitted at trial clearly establish that the plaintiff provided the defendant with a service (copying) and a product (the copied medical records) at the defendant's request. The plaintiff is entitled to be compensated for this.

Finally, the defendant argues that the trial court erred in failing to find SDS failed to comply with La.R.S. 13:3715.1(D) and thus the defendant is not liable for payment of the charges billed by SDS. We disagree. Non-compliance with La.R.S. 13:3715.1(D) does not, in itself, provide a party with a basis for refusing to pay for requested and supplied medical records. In fact, the only language in the statute addressing payment for records supports the proposition that the attorney should pay. R.S. 13:3715.1(G) (emphasis ours) states that "[t]he *health care provider shall be reimbursed by the person causing the issuance of the subpoena*, summons, or court order in accordance with the provisions of R.S. 40:1299.96." Louisiana Revised Statutes 40:1299.96(B)(1) provides: "'Health care provider' means a 'health care provider' as defined in R.S. 40:1299.41 or a 'state health care provider' as defined in R.S. 40:1299.39;" and R.S. 40:1299.41(A)(1) provides (emphasis ours):

> "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community

8

blood center, tissue bank, dentist, registered or licensed practical nurse or certified nurse assistant, offshore health service provider, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, licensed perfusionist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability subpoena, management company, or corporation whose business is conducted principally by health care providers, *or an* officer, *employee,* partner, member, shareholder, *or agent thereof acting in the course and scope of his employment.*

The testimony of Ms. Stevenson established that SDS answered the subpoenas the defendant caused to be issued to its clients requesting medical records as part of the service SDS provided to its clients. Thus, SDS meets the definition of "health care provider" as used in R.S. 13:3715.1(G).

In sum, we find none of the defendant's assignments of error have merit. We find that in the absence of express notice to the contrary, officers of the court, witnesses, and other persons connected, either directly or indirectly, with an ongoing legal proceeding, may safely regard themselves as dealing with the attorney, instead of with his client.

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendant, Michael B. Miller.

**AFFIRMED.**