MAX N. TOBIAS, JR., Judge.
|!Transport Services Co. of Illinois and its insurer, Protective Insurance Company (collectively, “Transport”), have filed the instant writ application seeking supervisory review of the trial court’s denial of their peremptory exception of prescription. Finding merit in Transport’s arguments, we grant the writ application, reverse the judgment of the trial court, and dismiss this case with prejudice.
This lawsuit arises from an alleged chemical spill that occurred on 7 August 2002 in New Orleans, Louisiana. The first lawsuit was filed on 7 August 2003 by Shirley Fulford, et al. in the Civil District Court for the Parish of Orleans as a class action; a second lawsuit, also a class action, was filed the same day and in the same court by Yolanda Abram (collectively referred to as the “Fulford/Abram plaintiffs”).
Transport timely removed the Fulford and Abram lawsuits to the United States District Court for the Eastern District of Louisiana, where they were consolidated. Following a 1 June 2004 hearing, the plaintiffs’ motion for class certification was denied, with the order entered into the record on the same day. The Fulford/Abram plaintiffs filed a motion for reconsideration that was also Ldenied. The Ful- *50 ford/Abram plaintiffs appealed to the United States Fifth Circuit, but subsequently dismissed their appeal.[1]
Tenesha Smith, Melvin Porter, and Wallace Dixon filed this lawsuit on 8 June 2004, making the same class action allegations as contained in the Fulford/Abram lawsuits; they were not named plaintiffs in the two prior suits. The trial court stayed the class action claims pending resolution of the federal case, but permitted the named plaintiffs to file an amended petition adding five hundred new plaintiffs to the lawsuit on 4 October 2004.
Once the stay was lifted, Transport filed a peremptory exception of prescription, arguing that the claims of all new plaintiffs had prescribed. The exception was denied by the trial court, stating that the earlier-filed class actions then pending in federal court interrupted prescription for the new plaintiffs. Transport applied for supervisory writs to this court and the Supreme Court, both of which were denied.
The issue of liability alone was tried to the court in December 2009. By agreement of the parties and the trial court, only the issues of liability and general causation were tried with regard to eleven plaintiffs. Nevertheless, the court ruled in favor of the named plaintiffs and entered judgment in favor of all plaintiffs, despite the agreement to the contrary. The trial court certified that partial judgment as final pursuant to La. C.C.P. art. 1915 A(5) so an immediate appeal could be taken by Transport before the issue of damages was addressed.
Transport appealed the issues of liability and general causation, as well as the prior interlocutory ruling denying their exception of prescription. This court | saffirmed the court’s ruling on prescription, reversed the trial court’s determination of causation, and remanded the matter for further proceedings.[2] Transport’s supervisory writ application filed with the Supreme Court was denied. See Smith v. Transport Services Co., 10-1238 (La.App. 4 Cir. 5/4/11), 67 So.3d 487, writ denied, 11-1147 (La.9/16/11), 69 So.3d 1146.
On 2 November 2012, the Supreme Court issued its opinion in Quinn v. Louisiana Citizens Property Ins. Corp., 12-0152 (La.l 1/2/12), 118 So.3d 1011, reh’g denied, (La.1/25/13). Simply put, the Quinn Court held that when the Louisiana legislature adopted La. C.C.P. art. 596, it had rejected “cross-jurisdictional tolling” in class action proceedings; thus, the Court held that prescription was not suspended under article 596 as to the Quinn plaintiffs’ class action claims by the timely filing of a class action proceeding in federal court arising from the same facts.[3] Id. at p. 19,118 So.3d at 1022-23.
*51 We addressed a similar issue in Ansardi v. Louisiana Citizens’ Property Ins. Corp., 11-1717, 12-0166 (La.App. 4 Cir. 3/1/13), 111 So.3d 460, writ denied, 13-0697, 13-0698 (La.5/17/13), 118 So.3d 380, wherein we determined en bane that |4the reasoning of Quinn also applied to a class action initially filed in a Louisiana state court and later removed to federal court. We held that applying Quinn meant that even a class action filed in state court and later removed to, and pending in, federal court had no effect on the tolling of the prescriptive period. Id. at p. 10, 111 So.3d at 466-67.
Following the Quinn and Ansardi decisions, Transport reurged its exception of prescription arguing that, under these cases, the Smith plaintiffs’ individual and representative claims herein, filed more than one year after the accident, were prescribed on the face of the petition and should be dismissed. The trial court denied the exception, finding that its earlier denial of the exception precluded consideration of the present exception pursuant to the doctrine of res judicata. This timely writ followed.
In order to be accorded res judica-ta effect, a judgment must be “final.” Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049. Pursuant to La. C.C.P. art. 1841, a judgment that determines only preliminary matters in the course of the action is an interlocutory judgment, whereas a judgment that determines the merits in whole or in part is a final judgment. Although the trial court certified its earlier partial judgment as final, an exception of prescription is a procedural matter that does not address the merits of the pending case.[4] Based upon the procedural Imposture of the case when we previously determined that prescription had not lapsed, the denial of the exception was merely interlocutory, -even when coupled with the appeal of a partial final judgment (on. the issue of liability), and it had no effect on the pending litigation. That is to say, only if the exception of prescription had been maintained and dismissed the plaintiffs’ case with prejudice would res judicata have applied. Therefore, res judicata cannot apply under these facts.
In Landry v. Blaise, 02-0822, pp. 2-3 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 664, we stated:
*52 [R]es judicata is designed to prevent re-litigation of issues “in any subsequent action.” LSA-R.S. 13:4231. Res judica-ta protects against a “second action.” Comment (a) to LSA-R.S. 13:4231. This doctrine does not bar a party in the same action from re-urging an exception.
A peremptory exception may be urged at any time. LSA-C. C.P. art. 928. A party may re-wge a peremptory exception after a denial of the exception. [Citations omitted; emphasis supplied.]
We find that the trial court erred by denying Transport’s exception of prescription based on res judicata.
IfiThe plaintiffs also argue that the exception is barred by the doctrines of “law of the case” and “contra non valen-tem agree nulla currit ” and that to apply Quinn and Ansardi retroactively to this case deprives them of substantive and procedural due process. We reject these arguments. Because of “intervening case law,” law of the case is not applicable. In KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc., 11-0598, pp. 7-8 (La.App. 4 Cir. 3/14/12), 89 So.3d 1207, 1211-12, we stated:
The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973). Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Id., 278 So.2d at 84.
The law of the case doctrine “may bar redetermination of a question of law or a mixed question of law and fact during the course of a judicial proceeding.” 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). Therefore, the law of the case doctrine is the proper procedural principle, as opposed to res judicata, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case. Posey v. Smith, 453 So.2d 1016 (La.App. 3 Cir.1984). The policy reasons behind the doctrine include: (i) avoiding re-litigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 330, 256 So.2d 105, 107 (1971).
|7However, “[ujnlike the statutory doctrine of res judicata, the jurisprudential doctrine of law of the case is a discretionary guide that will not be applied inflexibly.” Daigre v. International Truck and Engine Corp., 10-1379, p. 15 (La.App. 4 Cir. 5/5/11), 67 So.3d 504, 513-514. “Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.” Petition of Sewerage and Water Bd., 278 So.2d at 83. Moreover, *53 jurisprudence provides that the law of the case doctrine “does not apply when the issues are not identical, when there is more than a mere doubt as to the correctness of the earlier decision, or when there is intervening case law.” Mann v. Brittany Place Associates Ltd., 99-1588, p. 3 (La.App. 4th Cir. 9/13/00), 770 So.2d 25, 27 (citing Stewart v. ARA Leisure Services., Inc., 97-1926 (La.App. 4 Cir. 10/29/97), 702 So.2d 75, 77) (emphasis supplied [emphasis in original]).
Id. at pp. 7-8, 89 So.3d at 1211-12.
As for contra non valentem, the plaintiffs contend that the time to file the Smith suit did not start to run until the plaintiffs’ counsel mailed notice of class certification denial to the putative class members on 7 September 2004 and published notice in the New Orleans newspaper on 19-24 September 2004. Thus, they assert the time to file the Smith suit began, at the earliest on 7 September 2004. We reject this argument primarily because the attorneys representing the Ful-ford/Abram plaintiffs are the same attorneys representing the Smith plaintiffs. Knowledge to the lawyer (actual or otherwise) is knowledge to the lawyer’s client. Stevison v. Charles St. Dizier, Ltd., 08-887, p. 4 (La.App. 3 Cir. 3/25/09), 9 So.3d 978, 981; Andre v. Golden, 99-689, p. 8 (LaApp. 5 Cir. 12/21/99), 750 So.2d 1101, 1104; see also Regional Transit Auth. v. Levey, 595 So.2d 1255, 1258 (La.App. 4th Cir.1992); Wilco March Buggies & Draglines v. XYZ Ins. Co., 520 So.2d 1292 (La.App. 5th Cir.1988).
| sIn Smart Document Solutions, LLC v. Miller, 07-670 (La.App. 3 Cir. 10/31/07), 970 So.2d 49, the court examined the relationship between an attorney and his client. The court was most impressed by the analysis and conclusion from the North Dakota Supreme Court as follows:
[T]he attorney-client relationship differs from the general agency relationship because the attorney-client relationship is subject to an established code of professional responsibility governing members of the Bar, and the attorney, not the client, is in charge of the litigation and determines the services necessary to promote the best interests of the litigation. See Judd & Detweiler v. Gittings, 43 App. D.C. 304 (1915); Molezzo Reporters v. Patt, 94 Nev. 540, 579 P.2d 1243 (1978); Burt v. Gahan, 351 Mass. 340, 220 N.E.2d 817 (1966); Monick v. Melnicoff, 144 A.2d 381(D.C.Mun.App.1958); Roberts, Walsh & Co. v. Trugman, 109 N.J.Super. 594, 264 A.2d 237 (1970); Brown & Huseby, Inc. v. Chrietzberg, 242 Ga. 232, 248 S.E.2d 631 (1978).
The rationale for this rule was perhaps best stated in Judd & Detweiler v. Gittings, 43 App.D.C. at 310-311:
“While it is true that an attorney is the agent of his client, the relation between them, we think, is such that it calls for some. modification of the general rule which the law recognizes as existing between principal and agent. In ordinary transactions, the agent is subordinate to the principal, the principal standing out as the real actor, and the agent merely as a subordinate representative. But the relation between attorney and client is different. The attorney has complete charge of the litigation, is so recognized by the court, and, as such, dominates in all matters pertaining to the conduct of the litigation. ‘While in one sense the client is the principal and the attorney the agent, and while the attorney is professionally and constantly acting for clients, whose names from the records of the courts and other means of publicity are almost always known or may be so, yet there *54 are peculiarities in his case which 19make it neeéssary to apply to it with some qualification the general principles of agency. In most cases of agency the principal is what the name imports,-the leading person in the transaction. The agent is, as the term implies, a mere subordinate, important only as the representative of the principal; often representing only one principal. An attorney at law, on the other hand, occupies a position of recognized importance in itself, not infrequently of great prominence before the public, in which he often has a large number of clients, his relations to whom are full of detail, and who are little noticed by the public.’ Heath v. Bates, 49 Conn. 342, 44 Am.Rep. 234. The attorney usually determines what steps are to be taken in his client’s interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client.”
Id. at pp. 4-5, 970 So.2d at 51-52. We too agree with the analysis.
The plaintiffs also argue that the amended petition is timely under the relation back doctrine. They contend that the amended petition relates back to the original case filed by Smith, et al. on 8 June 2004. However, because the Ful-ford/Abram suit did not suspend prescription, the amended petition cannot relate back to the original petition that was itself prescribed. The plaintiffs also assert that the state court suits were timely because the federal court proceeding of the Ful-ford/Abram case was not finally dismissed until. 19 July 2007. Again, because the filing of the cases in state court did not suspend prescription, it matters not when the cases removed to federal court became final.
| ipThe Quinn and Ansardi cases address the notice provision of La. C.C.P. art 596, which is entirely procedural; Quinn merely interprets and clarifies the law in effect when the alleged accident occurred herein on 7 August 2002. Therefore, retroactive application is appropriate under the mandates of La. C.C. art. 6, (“Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary”). As the Supreme Court stated in Quinn:
For example, as noted, Fed. Rule Civ. Proc. 23 does not require notice to class members of denial of class certification. Thus, in putative class actions filed in federal court, if certification is denied, no notice is provided (and certainly not such notice as would include a statement of the relevant delay periods under Louisiana law, as required by La. C.C.P. art. 596(B)). The individual claims of putative class members arising under Louisiana law would, thus, remain suspended indefinitely.
Clearly, such was not the intent of the legislature in enacting La. C.C.P. art. 596. Its provisions contemplate that prescription, once suspended, “begins to run again” at some point. La. C.C.P. art. 596(A). To interpret the article to provide for cross-jurisdictional tolling would not only subvert the purpose of prescriptive statutes, but would render much of the language of Article 596 meaningless when a class action is filed in a jurisdiction other than Louisiana. Our rules of statutory interpretation do not permit us to reach such a result. *55 The distinctions between Louisiana class action procedure and federal class action procedure reinforce our conviction that the legislature, in linking the suspension of La. C.C.P. art. 596 to unique provisions of Louisiana law did not intend to adopt “cross jurisdictional tolling.”
After examining the words of the article, we find, therefore, that the plain language of La. C.C.P. art. 596 dictates that the suspension of prescription provided therein applies only to “petition[s] brought on behalf of a class” in the state courts of Louisiana.
I uId. at pp. 14-15, 118 So.3d at 1019-21 [footnote omitted]. Therefore, we find that Quinn and Ansardi may be applied retroactively.[5]
The plaintiffs’ final argument is that both Quinn and Ansardi were wrongly decided, are legally incorrect, and should be overruled on appeal. As counsel should be aware, we are bound by the law as established by the Supreme Court. Oliver v. Magnolia Clinic, 11-2132, 11-2139, 11-2142, p. 7 (La.3/13/12), 85 So.3d 39, 44 (citing Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500 (1969) and noting that “trial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court”). With regard to Ansardi, this court heard the matter en banc and rendered a unanimous decision, after which the Supreme Court denied writs. Obviously, in this court’s opinion, we were correct in our decision and have no reason to find otherwise. The pronouncements of Quinn[6] and Ansardi are binding on this court; the entire Smith suit had prescribed because prescription was never suspended by the earlier filed cases.
Thus, we reverse the judgment of the trial court, grant the peremptory exception of prescription of Transport Services Co. of Illinois and Protective Insurance Company, and dismiss these proceedings in their entirety with prejudice.
SUPERVISORY WRIT GRANTED; REVERSED; RENDERED.

. The Fulford/Abram lawsuit was tried in federal court in December 2006, wherein a jury found in favor of Transport and against the six named plaintiffs. The plaintiffs’ complaint was dismissed with prejudice.

. The plaintiffs contend that we did not reverse the trial court's determination of causation, however, that is, in fact what this court did. See Smith, p. 10, 67 So.2d at 493.

. We note with particularity footnote 8 in Quinn, which essentially abrogates this court’s and the Supreme Court’s decision in Smith:
Although the issue is res nova in this court, the plaintiffs point to the court of appeal’s decision in Smith v. Transport Services Co., 10-1238 (La.App. 4 Cir. 5/4/11), 67 So.3d 487, as persuasive authority. In Smith, the court of appeal applied the provisions of La. C.C.P. art. 596 to a putative class action filed in federal court. Id. 10-1238 at 7-8, 67 So.3d at 491-92. However, it did so as a matter of course, without any analysis. Rather than serving as persuasive authority, the decision, especially the lengthy concurrence in part, dissent in part, illustrates the problems encountered when La. C.C.P. art. 596 is applied to a class *51 action proceeding in a foreign jurisdiction. Id., 67 So.3d at 494 (Tobias, J., concurring in part, dissenting in part).
Quinn, p. 11, 118 So.3d at 1018-19 n. 8.

. La. C.C.P. art. 1915 provides in pertinent part:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or inter-venors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G).

. We further note that the Supreme Court applied the interpretation of La. C.C.P. 596 to the then-pending case before it; a case that was filed earlier before the Court clarified the law. In the instant matter, we likewise apply Quinn and Ansardi to the now-pending case before us.

. The plaintiffs cite to Harrison v. Horace Mann Ins. Co., 12-753 (La.App. 5 Cir. 4/10/13), 112 So.3d 1054, as containing a correct interpretation of Quinn. We disagree with our colleagues on the Fifth Circuit, finding that our- interpretation of Quinn in Ansar-di is correct and binding on us herein.