DAVID S. GORBATY, Judge.
| ,The instant appeal arises from a March 19, 2009 judgment approving a settlement and awarding attorney’s fees in the Orrill class action. The fairness hearing on the proposed settlement was held December 15-19, 2008. The facts and events culminating in this appeal were recently chronicled in Orrill v. Louisiana Citizens Fair Plan, 09-0566, 09-0568 (La.App. 4 Cir. 12/09/09), 26 So.3d 994. We will reiterate the facts necessary to address the issues raised by appellants herein.
The issues presented for review are res nova; there is no case law to support either party’s position, other than factors to consider at a fairness hearing. However, we must determine if the proposed *459 settlement in this case is fair in light of the existence of another active class action in another jurisdiction.
PROCEEDINGS BELOW:
This appeal involves three class action lawsuits. The captioned matter was filed in Civil District Court for the Parish of Orleans on October 2, 2005, and the class was certified June 6, 2008. A second class action entitled “Oubre v. Louisiana Citizens Fair Plan,” was filed in the 24th Judicial District for the Parish of Jefferson on November 18, 2005, and the class was certified on July 17, 2006. |2A third class action was filed in the 34th Judicial District for the Parish of St. Bernard entitled Chalona v. Louisiana Citizens Property Ins. Corp. It is unclear from the record exactly when this case was filed, but one can derive from the judgment certifying the class that it was filed after the Oubre suit. Chalona was certified on January 25, 2008. As of this date, the remaining defendant in each lawsuit is Louisiana Citizens Fair Plan (Citizens). All lawsuits were filed in connection with alleged failings by Citizens to timely adjust claims and/or timely offer to settle claims following Hurricanes Katrina and Rita. For purposes of this appeal, and at the request of plaintiffs’ counsel in both Orrill and Oubre, this Court has reviewed and considered the entire record filed in connection with 2009-CA-0566 c/w 2009-CA-0568 and 2009-CA-0888.
The Oubre class definition, which was affirmed by the Louisiana 5th Circuit Court of Appeal, is as follows:
All present or past insureds of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as “LCPIC”, who on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.
The original class definition in Orrill signed on June 6, 2008, was:
All persons insured by or through the Louisiana Citizens’ [sic] Fair Plan, and/or the Coastal Plan, underwritten, administered and/or serviced by any one or more of the named defendants, who sustained damages as a result of Hurricane Katrina to their covered personal and/or rental property and/or real property and improvements who have been unable to receive prompt adjustment within thirty days after notification of their loss, and/or who did not receive a written offer to settle within thirty days after receipt of satisfactory proof of loss of that claim, as provided by their policies of insurance.
[ .-¡Contemporaneously with the activities in Orrill, the Oubre case was moving forward in the 24th JDC, as was the Chalona case in the 34th JDC. Six months prior to certification of the class in Orrill, Judge Sullivan, the judge presiding over Oubre, approved the class notice, which advised:
At present, this class action covers no other claims of [sic] cause of action other than that clearly set forth in the class definition and effects no other pending litigation, individual and/or class action, brought in the Parish of Jefferson or any other parish which action is not in conflict with the class definition as set forth by this court.
If you have filed your own separate claim as a result of Hurricane Katrina or Rita against Louisiana Citizens which does not make a claim that Louisiana Citizens failed to initiate loss adjustment within thirty (30) days after notification of loss, you MAY maintain your own separate lawsuit AND be a member of this class.
*460 By remaining a class member, any claims against Louisiana Citizens for damages arising from their conduct as alleged by the class representatives will be determined in this case and cannot be presented in any other lawsuit.
At the same time these two above-referenced lawsuits were pending, the other class action, Chalona v. Louisiana Citizens, was pending in the 34th Judicial District Court for the Parish of St. Bernard. That court certified the class, and specifically noted and ruled:
This Court also takes note of the decision in and the class as defined in Oubre v. Louisiana Citizens Fair Plan, 961 So.2d 504 (La.App. 5th Cir., 2007).... The Court defined the class as ‘all present or past insured of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as “LCPIC,” who, on or after August 29, 2005, provided notification of loss resulting from Hurricane Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.’ The 5th Circuit Court of Appeal Laffirmed that decision and the Louisiana Supreme Court denied writs in the Oubre case, therefore there exists a maintainable class action in the 24th Judicial District Court of Jefferson Parish that inherently would include some potential class members of the class action at issue in the Chalona case. Additionally, the Oubre case was filed in Jefferson Parish before the Cha-lona case was filed in St. Bernard Parish. The Court takes note of the existence of Oubre, but must nonetheless render an appropriate judgment in the Chalona case. Accordingly, the defined class will exclude the members of the Oubre class unless they additionally did not have a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss.... Therefore, the Chalona class will seek recovery for damages for a different alleged act than Oubre and will not duplicate any recovery, (emphasis added.)
On September 23, 2008, counsel for Citizens sent a letter to Orrill counsel, accepting a proposal of settlement. In addition to outlining the monetary details of the settlement, the letter stated[1]:
In consideration of the above, the Chalona and Orrill class members will execute a complete Release in favor of Louisiana Citizens, relative to any and all other claims of bad faith (pursuant to La. Rev. Stats. 22:658, 22:1220 and/or any other provisions of the law) which they have or may assert, and emanating out of the occurrence of Hurricanes Katrina and/or Rita, which Release specifically includes, but is not limited to, the claims which are being asserted in the Oubre matter.
An order was signed on October 1, 2008, whereby the notice of the proposed settlement in Orrill was approved, and dates were set to opt out of the class, to object to the settlement, and for a fairness hearing. The Notice of Proposed Class Settlement contained a new class definition, effectively discarding the previously certified class definitions in both Orrill and Chalona, and enlarging and expanding |fithe class definition. The new class definition now included persons who were members or potential members of the Oubre class, the suit pending in the 24th Judicial District for the Parish of Jefferson.
The Stipulation of Settlement that accompanied the motion for approval specifi *461 cally states: “... there are pending in this, and other jurisdictions, the same or similar matters that contend to be class actions arising out of the same occurrence that was the subject matter of this litigation; and/or, in addition, are based upon the same cause or causes of action, involve parties in the same or similar legal capacity, and involve the same or similar evidence.” The Stipulation further stated: “The parties herein acknowledge that this Compromise Agreement, that is entered between the parties to avoid further litigation, is favored by law, has a force equal to the authority of things adjudged and thus has res judicata effect, as per provisions of La. Civ.Code Art. 3078, including members of the class as found in the ‘class definition’ below.” [emphasis added]. The referenced definition is identical to the one found in the motion to approve the settlement.
On October 29, 2008, Judge Sullivan issued a temporary restraining order to Citizens restraining them 1) from processing any claim form by an Oubre class member (as per Oubre class definition); 2) from considering the absence of receipt of an “opt out” form to be a consent by an Oubre class member to be included in Orrill; 3) from taking any action to include, enforce and/or apply the Orrill settlement stipulation against any member of the Oubre class; 4) from filing pleadings in Orrill designed to fund the qualified trust account, and/or authorizing distribution of any funds from that account to Oubre class members; 5) from communicating with any Oubre class member; and 6) from participating in any |f,fairness hearing in Orrill if the purpose of said participation is to seek to include, involve, affect, or impact on the Oubre class members.
Two persons, Daryl Roberts and Bruce Scharwath, objected to the settlement by filing written objections. They were in attendance at the fairness hearing on December 15, but did not testify. In their written objections the objectors noted that:
1. The failure to timely pay violation carries a penalty of $1,000, and could be difficult to establish, due to the potentially subjective and individualized issue of what specifically constitutes “satisfactory proof’ of a given loss, as well as the likely requirement to make an independent showing that defendant had been “arbitrary” and “capricious”. The failure-to-timely-initiate-loss-adjustment violation, by contrast, carries a $5,000 penalty, and can be proven through largely objective criteria, in many cases from Citizens’ own records. Yet, under the Orrill Settlement, each class member gets $1,000, irrespective of whether he or she has a failure-to-pay claim, a failure-to-initiate-loss-adjustment claim, or both.
2. The notice was both procedurally and substantively defective. Over 8,000 notices were returned, and there was no effort to perform “skip tracing” or other accepted methods to locate these individuals. Substantively, the notice fails to advise of the existence of the Oubre class action, and the differences between and among the types of claims being pursued and purportedly compromised or released in the various cases. In addition, particularly given the dislocation of class members after Hurricanes Katrina and Rita, the time period for deciding whether to participate or opt-out was only 45 days (too short).
3. Class members with multiple claims on multiple policies and/or properties get the same amount as class members with only one property at issue.
Appellants presented expert testimony of Roy Amedee, Jr., who was accepted by the court as an expert in the field of class *462 action litigation and procedure. He addressed the defects identified by appellants, and additionally, the |7court’s lack of jurisdiction over the failure to initiate loss adjustment claims previously certified by the 24th Judicial District Court in the Ou-bre class action. It was his opinion that by approving the proposed settlement, two separate causes of action were being settled for one sum. For example, persons who qualified as members of the Orrill class only because of Citizens failure to timely adjust their claims, would collect $1,000 instead of $5,000, which is the actual statutory penalty for failure to timely adjust. In Mr. Amedee’s opinion, the settlement proposal did not provide due process for persons who had both types of claims. One of the main reasons for this opinion was that the settlement documents, including the notice, failed to mention the existence of the Oubre class action. This creates a due process issue for the persons who opted out of the Orrill class, but whose claims will now be settled because of the res judicata effect of the Orrill settlement.
The appellants also presented the testimony of Todd Hilsee, who the court accepted as an expert in communications and notice. He indicated that several elements for effective communication are necessary to comply with due process, specifically, reaching the class, designing a concise notice, presenting the information in a neutral way, and allowing adequate time for response. He also opined that it was a deficient notice not to have advertised the actual proposed settlement in local newspapers and other periodicals, especially in light of the hurricanes’ impact on the potential class. Newspaper articles whereby a reporter gives a synopsis of the settlement are not sufficient because they tend to be confusing to the reader, and often, are not accurate. Mr. Hilsee also examined the Orrill notice in light of the existence of Oubre, and found the notice deficient because it failed to inform and explain that settling Orrill would have an effect on [8the Oubre case. However, the trial court disallowed any discussion of Oubre, thereby excluding a large portion of Mr. Hilsee’s testimony. The bottom line of Mr. Hilsee’s opinion was that the notice of the Orrill class settlement did not comport with due process requirements.
Attorneys for the Orrill class action presented the testimony of James Donelon, Commissioner of Insurance for the State of Louisiana. He testified that he attended various status briefings with Citizen’s in-house counsel and was kept apprised of the status of active class actions against Citizens. He reiterated what he had told the media the week before the hearing, i.e., that he believed the settlement offer to be fair and equitable. It was his opinion that the settlement offer of $1,000 per claimant adequately compensated the “victims.” He further opined that the overwhelming majority of the claimants would only be entitled to a maximum of $1,000. He stated that the “opt out” provision would allow those not happy with a $1,000 settlement to pursue their rights. In Mr. Donelon’s opinion, the settlement adequately balanced the interests of the class members with that of Citizens, the current policyholders of Citizens, and all Louisiana citizens.
On cross-examination, Mr. Donelon stated that his role as commissioner was to protect policyholders, some of which were members of the purported class, and to protect other Louisiana policyholders who would be forced to pay for the losses incurred by Citizens.
Oscar McGee, who was a recent law school graduate, testified that he was a member of the Orrill class. In his opinion *463 the settlement offer was fair and in the best interest of the class. He also stated that if he opted out[2] he would have to hire |9an attorney to pursue his claims, costing him money. However, if he remained a member of the Orrill class, the settlement provided that class counsels’ fees would be paid by defendants.
Toni Swain Orrill, a class representative, testified that the settlement was a “symbolic” way for the residents of Louisiana to move forward following the hurricanes of 2005. She also believed the settlement of $1,000 per claimant was fair, but admitted that she, as class representative, was to receive an additional $15,000. Ms. Orrill testified that she was unaware of any advertisements, town meetings, postings, or other means used to notify potential class members of the proposed settlement.
Dennis McCartney, an employee of Bourgeois, Bennett, the court-appointed claims administrator for the class, explained that it was his duty to send out notices of the proposed settlement, receive correspondence from potential claimants, including opt-out forms, and handle all other communications from potential class members. That information would then be captured in a database to be used for disbursement purposes. He advised that Citizens represented to him that they had already updated the database for last known addresses of policyholders. Bourgeois, Bennett then processed the list against the National Change of Address database. Ultimately, 60,940 notices were mailed; 8,386 were returned as undeliverable. Of those returned, a re-mailing was done of 1,253 notices. As of the day of the hearing, 12,058 claims had been processed, and of those, 2,415 claimants were mailed deficiency notices to obtain omitted information. His office received 609 “valid” opt-out forms; however, 782 opt-out forms were considered invalid because the names were listed in bulk by attorneys without individual claim forms, signatures, policy numbers or other required information set out in the | innotice. Mr. McCartney estimated that his firm would eventually receive a total of 15,000 claims.
Orrill counsel called Suzanne Donde-ville, director of litigation for Citizens, who testified that if forced to trial, Citizens would present the defense of immunity to all statutory penalties. This defense was raised in Reed v. Louisiana Citizens Property Ins. Corp., 07-1592 (La.App. 4 Cir. 3/5/08), 980 So.2d 754.[3] Other potential defenses to the failure to timely adjust existed such as Citizens’ inability to contact policyholders because of lack of telephone communication, or not being able to enter certain areas of south Louisiana due to flooding, lack of electricity, etc. Ms. Dondeville was also of the opinion that the failure to timely pay claims would eventually be decertified as a class because of the specific information needed to prove satisfactory proof of loss. Such proof was not amenable to a class action.
Ms. Dondeville testified that it was her duty to represent both the interests of Citizens and the citizens of the State of Louisiana. She based the latter on the fact that Citizens is funded with taxpayer money. Although she was aware of the negotiations going on between counsel for Citizens and Orrill counsel, she could not remember details. Much of what she was asked by counsel for Mr. Scharwath, was deemed protected by attorney/client privilege.
*464 Orrill counsel called Emile Rolfs, who was accepted by the court as an expert in class action litigation, practice and procedure. Mr. Rolfs stated that there is no statutory or jurisprudential provision that prevents a trial judge from redefining the constituency of the class or the issues to be maintained. The fact [nthat another class action was pending in another jurisdiction had no bearing whatsoever on the Orrill trial court’s authority to render judgment, dismiss or compromise the case. In his opinion the class notice of settlement was sufficient. On cross-examination he admitted that most recent cases of which he was aware had official websites, which this case did not. Also, cases in which he had personal involvement advertised the proposed settlement in the newspaper, which this case did not. Mr. Rolfs also admitted that there were other methods used in cases for which he was either an attorney or special master, where much more extensive means were used to locate potential class members.
STANDARD OF REVIEW:
In general, a district court’s approval of a proposed settlement may not be overturned on appeal absent an abuse of discretion. See Reed v. General Motors Corp., 703 F.2d 170, 172 (C.A.Tex.1983). “The exercise of discretion is to be tested by inquiries that ensure that the settlement is in the best interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression.” Id., quoting Pettway v. American Cast Iron Pipe Co., 576 F.2d at 1214.
DISCUSSION:
As viewed by this Court, we must examine whether the re-definition of the class and the ensuing settlement adversely impacted the vested, substantive rights of persons who were actual or potential members of the Oubre case. In effect, the redefining of the class subsumed the Oubre class action. As stated infra, the Oubre class members were entitled to a potential recovery of $5,000 for each property covered by a Citizens’ policy and damaged by Hurricane Katrina and/or Rita. The claims of the Orrill class were originally for $5,000 failure to timely [ l2adjust claims and/or $1,000 failure to pay claims, but only for Hurricane Katrina. When the class definition was enlarged pursuant to the proposed settlement, claims relative to Hurricane Rita were added.
As previously noted, the Oubre class was certified almost two years before the original class in Orrill was certified, and a class notice was approved and mailed. On November 13, 2008, the trial court issued a temporary restraining order prohibiting Oubre counsel from contacting any member of the newly defined Orrill class. On December 1, 2008,[4] this Court granted Ou-bre counsel’s writ, holding that the Civil District Court could not enjoin the Oubre class-appointed attorneys from communicating with their clients. Despite our ruling, the trial court held a hearing and rendered judgment on December 22, 2008, issuing a preliminary injunction allowing Oubre counsel to contact their own class members/clients, but prohibiting them from contacting any Orrill class members. The problem created by this ruling was that the proposed settlement now included Oubre class members, whose attorneys were prohibited from contacting or counseling them. The Oubre attorneys appealed the granting of a preliminary injunction by the Orrill trial court, but this Court did not render an opinion on that appeal until December 9, 2009. The proposed settle *465 ment in Orrill was approved March 19, 2009. Thus, during the time the settlement was being litigated, the Oubre class was not being represented by its appointed counsel.
The proposed settlement with its res judicata effect is essentially an end-run to settle all claims against Citizens without properly notifying the Oubre class | ^members and without allowing the court-appointed Oubre attorneys to counsel their clients.
Herein lies the dilemma: An entire class of persons (Oubre actual or potential class members), were not allowed to be counseled by their court-appointed attorneys; the only attorneys from whom they could seek advice were the attorneys proposing the settlement; and, the impact of the settlement was that their claims in the Oubre class were compromised and settled, possibly without a clear understanding of that outcome.
The three issues presented for review are: 1) whether the settling class members were adequately represented; 2) whether the settlement is fair, reasonable and adequate; and, 3) whether the class notice complied with the requirements of due process. Based on our review of the evidence, the answer is no.
As we surmise, the first improvident action taken in this case was the expansion of the class definition. We are aware that La. Code Civ. Proc. art. 592 A(3)(c) permits a court to amend, alter, or recall any ruling on certification and may enlarge, restrict or otherwise redefine the constituency of a class. However, a court cannot enlarge a class to include persons, occurrences or causes of action, not present in the operative facts as set out in the underlying pleadings. Our review of the record convinces us that none of the petitions (original, first supplemental and amended, and second supplemental and
amended) filed in Orrill contain operative facts to allow the trial court to expand the class definition. In other words, no claim resulting from Hurricane Rita or the specific pleading of former La. R.S. 22:658A(3) claims as a result of Hurricane Katrina are pled in any petition. Thus, we find it was error for the trial court to redefine and expand the Orrill class.
1As outlined infra, many Citizens’ policyholders were originally members or potential members of the Oubre class. A class notice had been court-approved and mailed. The opt-out period for the Oubre class had long since expired. Thus, the class was clearly established and counsel had been appointed to represent it. Suddenly, out of left-field, in our humble opinion, a new Orrill class was defined and approved in another court, with its own set of counsel. Those counsels proposing the settlement have a vested interest in settling the case. A notice was approved and mailed, but many notices never reached the intended mark. It is our opinion that the persons who were suddenly subsumed into Orrill settlement class did not receive adequate notice and were not adequately represented.
The first reason for this conclusion is that the method of notifying the newly defined class in Orrill was grossly deficient, especially in light of the devastation to the southern region of Louisiana, and the subsequent displacement of a vast majority of the residents in the region.
Proper notice is essential to a class settlement. See La.Code Civ. Proc. arts. 592 B and 594 A(2). The Manual for Complex Litigation, Fourth, § 21.3 instructs that a major concern in class actions is adequate communication between the court and counsel with the class. Appropriate means should be developed to provide information to, and obtain and *466 handle information and inquires from actual and potential class members. The federal committee noted that courts must “work unremittingly” to communicate with class members in plain language.[5]
11fi Appellants’ expert, Todd Hilsee, opined that the notice in this case was woefully inadequate in terms of what a qualified professional would use to actually inform the class of its rights and options. Numerous deficiencies are noted, not the least of which was only attempting to reach potential class members via U.S. mail. Also important was the notice’s failure to explain “in plain language” what the res judicata effect would be on the Oubre litigation.
Appellees’ expert, Emile Rolfs, admitted that in this day of modern technology it has become commonplace for the creation of a website to allow interaction and communication between the proposed settling class and counsel. Advertising the old-fashioned way, i.e., newspaper, is also common, especially when the class encompasses a broad geographical area.
The method of notice also creates a lack of meaningful representation for the class members. The Oubre counsel were prohibited from contacting their clients to explain the ramifications of the settlement. We venture to say that most lay persons do not know what res judicata means; thus, there is the potential that many interested persons did not realize that by not opting out of Orrill, their claims in Oubre would never be litigated and that they could potentially lose thousands of dollars.
This Court is also of the opinion that the settlement offer creates conflict among settling class members. The persons with failure to timely adjust claims are potentially entitled to the $5,000 penalty, whereas those with failure to timely pay claims are potentially entitled to a $1,000 penalty. Obviously the structure of this settlement provides that regardless of the claim, the most any claimant can receive is $1,000. Thus, some class members will be made whole, while others can not and will not.
| lfiIt is irrelevant that the citizens of Louisiana will benefit from this settlement as explained by Jim Donelon. All of the citizens of Louisiana are not plaintiffs in this action. La.Code Civ. Proc. art. 594 B requires that the compromise be “fair, reasonable, and adequate for the class.” In its finding that the settlement was fair, the trial court considered the effects on future Citizen’s policyholders as well as all other Louisiana homeowners. Both Mr. Done-Ion and Ms. Dondeville testified that such a small payout to settle the case would prevent insurance rates from having to be increased. This fact, although alluring, is not one which should be considered in settling this class action.
This Court also finds it curious that Citizen’s negotiated with Orrill counsel to settle all outstanding claims, when, at the time of the settlement negotiations, Orrill counsel did not represent all outstanding claimants (Orrill did not include failure to timely adjust claims for Hurricane Rita). It is also troubling that despite the ongoing negotiations with Oubre counsel, Citizen’s did not disclose to Judge Sullivan that it was attempting to settle all claims with one fell swoop. Again, we are cognizant that Orrill and Oubre were being litigated in two different venues, however, candidness with a court is a benchmark of *467 ethical conduct. Counsel for Citizens was less than candid with the Oubre court.
For the foregoing reasons, we reverse the judgment of the trial court and vacate the settlement proposal. This case is remanded for further proceedings.
REVERSED; SETTLEMENT PROPOSAL VACATED.
MURRAY, J., Concurs in the Result.

. At the time this letter was sent, the Chalona lawsuit had not been dismissed. It was not dismissed until October 1, 2008, when Judge Buckley granted an exception of lis pendens.

. At the time of the hearing, the "opt out” date had passed.

. This Court rejected Citizens’ assertions of immunity in the Reed case. Citizens appealed to the Louisiana Supreme Court; however, it later withdrew the appeal.

. 2008-C-1468

. The Court is aware that multi-district litigation standards have not been adopted in Louisiana. However, because our class action substantive and procedural laws closely follow the federal law, we rely on the manual for guidance.