WEIMER, Justice.
hWe granted certiorari in this case to consider two separate, but related issues: (1) whether the suspension of prescription provided for in La. C.C.P. art. 596 extends to a putative class member who files an individual claim after a ruling on the class certification issue and, if so, (2) whether La. C.C.P. art. 596 suspends prescription when the putative class action is filed in another jurisdiction. After reviewing the relevant statutory provisions, we find that the filing of an individual lawsuit after a ruling on class certification does not operate as an “opt out” of a class action proceeding and a forfeiture of the benefits of suspension provided in La. C.C.P. art. 596, but that the provisions of La. C.C.P. art. 596 do not extend to suspend prescription on claims asserted in a putative class action filed in a federal court. As a result, we reverse the district court’s judgment denying the defendant’s exception of pre *1013 scription, sustain the exception, and remand this matter to the district court to allow plaintiffs the opportunity to amend the petition, if they can, to allege facts to show their claims are not prescribed.
REACTS AND PROCEDURAL HISTORY
On October 28, 2009, plaintiffs David and Demetria Quinn (“the Quinns”) filed suit against Louisiana Citizens Property Insurance Corporation (“Citizens”) in the Twenty-fourth Judicial District Court for the Parish of Jefferson.[1] In its preamble, the Quinns’ petition asserts that Citizens was a defendant in a “Class Action Claim” in the United States District Court for the Eastern District of Louisiana that was “recently dismissed” and, as a result, the Quinns seek to assert “their individual claims.”
According to the petition, the Quinns’ claims arise out of property they owned in Harvey, Louisiana. The petition alleges that on August 29, 2005, the property was insured under a homeowner’s policy issued by Citizens. During Hurricanes Katrina and Rita, the property sustained wind and rain damage (prior to any flooding) which rendered it uninhabitable. More than thirty days elapsed after satisfactory proof of loss was submitted to Citizens, but compensation for the loss, according to the terms of the policy, was not received. Damages were requested for the underpayment of amounts due under the terms and conditions of the Citizens policy and for all other general and equitable relief as may be appropriate.
Citizens responded to the petition by filing a peremptory exception of prescription. In that exception, Citizens argued the Quinns were putative members of two class actions filed on behalf of similarly-situated Citizens insureds, Buxton v. Louisiana Citizens Property Ins. Corp., No. 2006-8341 on the docket of the Civil District Court for the Parish of Orleans, and Chalona v. Louisiana Citizens Property Ins. Corp., 08-0257 (La.App. 4 Cir. 6/11/08), 8 So.3d 494, but their claims Rwere no longer represented in those proceedings. Citing Taranto v. Louisiana Citizens Property Ins. Corp., 10-0105 (La.3/15/11), 62 So.3d 721, Citizens argued that based on the April 24, 2008 notice of class restriction issued in Chalona, the latest date on which the Quinns could timely assert their claims was May 31, 2009, and the petition filed on October 28, 2009, was, therefore, prescribed. Alternatively, citing Lester v. Exxon Mobil Corp., 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La.12/17/10), 51 So.3d 14, Citizens argued that by filing an individual lawsuit, the Quinns “opted out” of all class actions and, in doing so, forfeited the benefit of the suspension of prescription afforded under La. C.C.P. art. 596, rendering their lawsuit untimely because it was filed long after the legislatively imposed deadline for filing claims for damages caused by Hurricanes Katrina and Rita.[2]
The Quinns opposed the exception of prescription, alleging they were putative class members in the following class action proceedings: Orrill v. AIG, Inc., 09-0888 (La.App. 4 Cir. 4/21/10), 38 So.3d 457, writ denied, 10-0945 (La.9/17/10), 45 So.3d 1035;[3] Oubre v. Louisiana Citizens Fair *1014 Plan, 09-620 (La.App. 5 Cir. 11/9/10), 53 So.3d 492, writ granted, 11-0097 (La.4/8/11), 61 So.3d 673; reversed, 11-0097 (La.12/16/11), 79 So.3d 987; In Re: Katrina Canal Breaches Consolidated Litigation, No. 05-4182 on the docket of the United States District Court for the Eastern District of Louisiana; State v. AAA Ins. Co., No. 07-5524 on the docket of the United States District Court for the Eastern District of Louisiana (the “Road Home” litigation); and Buxton. The Quinns argued that because Oubre, _JjOrrill, and the Road Home actions were then still pending, and because Buxton and In Re: Katrina Canal Breaches Consolidated Litigation were dismissed without notice to the Quinns, prescription on their individual claims remains suspended pursuant to La. C.C.P. art. 596. In addition, they argued that the filing of their individual claim was neither an “opt out” of any of the class actions, nor a forfeiture of the suspension of prescription provided under La. C.C.P. art. 596.
A hearing on the prescription exception was conducted on August 26, 2011. At that hearing, the district court entertained the arguments of counsel, but no evidence was offered or received. Instead, at the conclusion of argument, the district court ruled from the bench:
I’m going to deny the exception. The Taranto Court did not hold that all Plaintiffs who had claims against Citizen[s] had until May 31, 2009 to file. Whether a claim is prescribed for a putative member of a class depends on if the Plaintiff opts out of the class, and notice is given that the member has been excluded from the class or notice is given that the Court has denied certification of the class. In this case the Plaintiff has not received notice of any dismissals or restrictions on class action cases, which is a requirement to start the running of time of prescription. An[d] one or more of the cases is still pending, and so forth. This exception has to be denied.
Citizens applied for a supervisory writ from the adverse judgment. The Court of Appeal, Fifth Circuit, denied the writ. In written reasons accompanying the writ denial, the court of appeal reasoned:
In analyzing whether the plaintiffs in this case timely filed their claims, we must consider all class actions, which were timely filed, and whether the plaintiffs are putative members of any class. One class action, upon which the plaintiffs rely, Oubre v. Louisiana Citizens Fair Plan, 09-620, p. 28 (La.App. 5 Cir. 11/9/10), 53 So.3d 492, 508, writ granted, 11-0097 (La.4/8/11), 61 So.3d 673, writ denied, 11-0173 (La.4/8/11), 61 So.3d 687, defined the class as including insureds of Citizens who provided notification of loss but did not receive adjustment of the claims within 30 days, an allegation made here.
Oubre is pending on appeal. At this time, the current plaintiffs have received no notice that the Oubre court has denied certification of the 15class or excluded any member from the class. Thus, prescription has not yet run. La. C.C.P. art. 596.
Quinn v. Louisiana Citizens Property Ins. Corp., 11-C-937, p. 2 (La.App. 5 Cir. 9/23/11) (unpublished).
The court of appeal made short shrift of Citizens’ argument that the Quinns opted out of all respective classes by filing their individual lawsuits after the resolution of the class certification issue in each, distinguishing Lester on the grounds that “plaintiffs in this case, unlike the Lester case, filed suit after class certification,” as opposed to before. Id.
On Citizens’ application, we granted cer-tiorari to review the correctness of the lower courts’ rulings. Quinn v. Louisiana *1015 Citizens Property Ins. Corp., 12-CC-0152 (La.3/30/12), 85 So.3d 100.
LAW AND ANALYSIS
Our grants of certiorari in this case and in the case of Duckworth v. Louisiana Farm Bureau Mutual Ins. Co., 11-2835 (La.3/30/12), 85 So.3d 99, were directed to addressing the issue of whether a plaintiff who is a putative class member, but who elects to file an individual suit, effectively opts out of the class and loses the benefit of any suspension of prescription resulting from the filing of the class action. In Duckworth, the plaintiffs filed an individual lawsuit prior to the resolution of the class certification issue in the class action in which they were putative members. In the instant case, the individual lawsuit was filed after a determination on class certification. In both cases, the defendants argue that the filing of an individual lawsuit operates as an “opt out” of any class action proceeding in which a plaintiff is a putative class member and a forfeiture of the benefits of the suspension of prescription afforded by La. C.C.P. art. 596.
IfjFor the reasons assigned in the Duckworth opinion (released simultaneously with the opinion here), we hold that the filing of an individual lawsuit, regardless of its timing, is not an avenue for “opting out of’ or requesting exclusion from a class and, thus, not a trigger for recommencing the running of liberative prescription under La. C.C.P. art. 596 or for forfeiting the benefits of suspension provided thereunder. Duckworth, 11-2835 at 14-20, 85 So.3d at 100. Our conclusion in this regard is both constrained and defined by the express words of La. C.C.P. art. 596, which extends the benefits of suspension to the claims of all members of a class described in a class action petition and sets forth detailed provisions directing when prescription begins to run again once a ruling on class certification is made:
A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class. .
[[Image here]]
In delineating three discrete events as the exclusive statutory triggers for re-commencing prescription, La. C.C.P. art. 596 illustrates and underscores that there are three means by which an individual achieves exclusion from a class action proceeding filed in Louisiana state court: (1) by submitting an election form; (2) by J^restriction or redefinition of the class to exclude that individual; or (3) by dismissal of the action, a judgment striking the demand for class relief, or a judgment denying the motion for class certification or vacating a previous order certifying the class. Filing an individual lawsuit in the absence of one of these statutory triggers is simply not one of the means contemplat *1016 ed by the statutes for “opting out of’ or achieving exclusion from a class action and, thus, for re-commencing the prescriptive clock or forfeiting the benefits of suspension afforded under La. C.C.P. art. 596. Duckworth, 11-2835 at 18-19, 85 So.3d at 100.
When the Code of Civil Procedure articles on class action proceedings in Louisiana are examined as a whole, and La. C.C.P. art. 596 is read in conjunction with La. C.C.P. art. 592, it becomes clear that when a class action is certified in Louisiana, all persons who fall within the class definition are class members. The only avenue for requesting exclusion from a class once it is certified is by the timely submission of an election form. La. C.C.P. art. 592(B)(2)(b); Duckworth, 11-2835 at 18, 85 So.3d at 100. In the absence of such a form, the class member is bound by the class action judgment. La. C.C.P. art. 592(B)(2)(c). In the event a timely election form is submitted electing exclusion from the class, prescription on an individual claim commences to run again thirty days from the submission of the form. La. C.C.P. art. 596(A)(1). In the event a class is redefined or restricted to exclude an individual, the class action is dismissed, the demand for class relief stricken, or certification of the class is denied or an order previously granted certification is vacated, prescription commences to run again thirty days “after mailing or other delivery or publication of a notice” of the action. La. C.C.P. art. 596(A)(2) & (3).
To paraphrase Duckworth, (and, again for the reasons expressed therein, which we find applicable here) the plain language of La. C.C.P. art. 596 provides for Rthe suspension of liberative prescription “on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class ... as to all members of the class as defined or described therein,” until such time as individuals cease to be members of the class. La. C.C.P. art. 596 provides a list of discrete, specific, and clear triggering events delineating when class membership ceases for prescription purposes. The filing of an individual lawsuit in the absence of one of these triggering events is not one of them. Duckworth, 11-2835 at 25, 85 So.3d at 100.
According to its plain terms, to receive the benefit of the suspension of prescription provided in La. C.C.P. art. 596, however, an individual filing an independent suit must establish three predicate facts: (1) the existence of a timely filed class action proceeding against the defendant, (2) that he or she is a member of the class described or defined in the identified class petition, and (3) that the claims asserted in the independent action arise “out of the transactions or occurrences described” in that petition.[4]
*1017 | nBefore this court, Citizens argues the district court erred in denying its peremptory exception of prescription because the Quinns failed to satisfy their burden of proving they were putative members of a timely filed class action proceeding and, thus, entitled to the benefits of suspension of prescription provided in La. C.C.P. art. 596.
As a general rule, prescription statutes “are strictly construed against prescription and in favor of the obligation sought to be extinguished.” Taranto v. Louisiana Citizens Property Ins. Corp., 10-0105, p. 5 (La.3/15/11), 62 So.3d 721, 726; see also Bailey v. Khoury, 04-0620, 04-0647, 04-0684, p. 9 (La.1/20/05), 891 So.2d 1268, 1275. Ordinarily, the party urging prescription bears the burden of proof at trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show the action is not prescribed. Taranto, 10-0105 at 5, 62 So.3d at 726; Cichirillo v. Avondale Industries, Inc., 04-2894, 04-2918, p. 5 (La.11/29/05), 917 So.2d 424, 428; Bailey, 04-0620, 04-0647, 04-0684 at 9, 891 So.2d at 1275. Although evidence may be introduced to support or controvert the exception, in the absence of evidence, an exception of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true. La. C.C.P. art. 931; Wells v. Zadeck, 11-1232, p. 7 (La.3/30/12), 89 So.3d 1145, 1149-1150; Cichirillo, 04-2894, 04-2918 at 5, 917 So.2d at 428.
In the present case, no evidence was introduced at the hearing on the prescription exception.[5] As a result, the exception must be decided on the basis of the Jjjfacts pleaded in the Quinns’ petition. That petition, filed October 28, 2009, seeks damages pursuant to a homeowner’s insurance policy for losses resulting from Hurricanes Katrina and Rita. Through 2006 La. Acts 739 and 802, the legislature extended the prescriptive period on such claims until September 1, 2007 (for claims resulting from Hurricane Katrina), and October 1, 2007 (for claims resulting from Hurricane Rita). The Quinns’ claims, asserted more than two years after these dates, would at first glance appear to be prescribed. However, the Quinns’ petition additionally alleges that Citizens was a defendant in a “recently dismissed” class action proceeding filed in the United States District Court for the Eastern District of Louisiana, and that plaintiffs “desire to file their individual claims as a result of this ruling.” In other words, the petition affirmatively alleges facts to show that prescription has been suspended by virtue of the filing of a class action proceeding in which plaintiffs were putative class members.[6]
*1018 Ordinarily, such allegations would be sufficient to allow this court to conclude that the Quinns’ petition was not prescribed on its face and, therefore, it was Citizens’ burden to prove the Quinns’ claims are prescribed-a burden clearly not met because Citizens did not introduce any evidence at the trial of the exception. However, the class action proceeding on which plaintiffs rely in their petition to establish a suspension of prescription was filed in federal district court. Seizing upon this fact, Citizens argues that La. C.C.P. art. 596 does not apply to suspend prescription when the class action is filed in another jurisdiction. In other words, Citizens argues that |nplaintiffs are not entitled to the benefits of La. C.C.P. art. 596 because that article does not provide for “cross-jurisdictional tolling.”[7]
This court has not previously addressed whether the provisions of La. C.C.P. art. 596 suspend prescription where the applicable Louisiana prescriptive period has expired while a claim has been pending as a putative class action in another jurisdiction-in this case a Louisiana federal district court.[8] Mindful of our civilian mandate, in resolving the matter now squarely placed before us, we begin, as we must, with the language of the code article itself. In re Succession of Faget, 10-0188, p. 8 (La.11/30/10), 53 So.3d 414, 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993).
An examination of the plain words of La. C.C.P. art. 596, quoted supra, reveals the article contains no express language limiting its effect to class actions filed only in Louisiana state courts, ordinarily an indication that such a limitation was not intended. However, a closer reading of the article reveals its operative provisions are specifically tied to several unique features of Louisiana class action procedure. For example, La.C.C.P. art. 596(A)(1) provides that prescription begins to run again thirty days from the submission of an “election form” seeking to be excluded from a certified class. As we pointed out in Duck-worth, through La. C.C.P. art. | is592(B)(2)(b), the legislature has chosen to tie exclusion from a class (and the recommencing of prescription under Article 596(A)(1)) to the submission of an election form, a form particular to Louisiana practice.[9] Duckworth, 11-2835 at 18, 85 So.3d at 100.
Likewise, La. C.C.P. art. 596(A)(3) provides that prescription begins to run again thirty days “after mailing or other delivery or publication of a notice to the class” that, *1019 inter alia, “the demand for class relief has been stricken pursuant to Article 592.” La. C.C.P. art. 596(A)(3). Again, the motion to strike a demand for class relief, authorized by La. C.C.P. art. 592(A)(2) when a proponent of a class action fails to file a timely motion for certification, is particular to Louisiana.[10]
Most significant are the provisions of La. C.C.P. art. 596(A)(2) and (3), which require, before prescription begins to run again, “mailing or other delivery or publication of a notice to the class” of certain events: (1) the class has been restricted or otherwise redefined to exclude certain individuals, (2) the action has been dismissed, (3) the demand for class relief has been stricken, or (4) certification has been denied or vacated. This requirement of notice to restart the running of prescription is unique to Louisiana. The federal rules, in particular, do not require notice of such exclusionary events. Rineheart v. Ciba-Geigy Corp., 190 F.R.D. 197, 200 (M.D.La.1999) (“[N]o notice of a dismissal or settlement to asserted class 11smembers is required if there has been a judicial denial of class certification.”) citing inter alia, Pearson v. Ecological Science Corp., 522 F.2d 171, 177 (5th Cir.1975) (“Hence, where a court has ruled under Rule 23(c)(1) that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply, at least where the dismissal and settlement of the action do not directly affect adversely the rights of individuals not before the court.”). See also, In re Katrina Canal Breaches Litigation, 401 Fed.Appx. 884, 887 (5th Cir.2010) (“[TJhere is nothing that requires the court to order notice of the denial of class certification, and we find no abuse of discretion in the court’s refusal to do so.”). Moreover, the content of the notice required under La. C.C.P. art. 596(A)(2) or (3) in the event of exclusion is tied firmly to the provisions of Louisiana law. Thus, for example, La. C.C.P. art. 596(B) dictates that “[t]he notice required by Subparagraphs (A)(2) and (3) of this Article shall contain a statement of the delay periods provided herein.” [11]
The significance of this language specifically linking the recommencement of prescription to particular aspects of Louisiana class action procedure is evident. By tying the operative provisions of La. C.C.P. art. 596 to unique aspects of Louisiana class action procedure, the legislature has expressed an intent that suspension of prescription under La. C.C.P. art. 596 can apply only to putative class actions filed in Louisiana state courts. Because Louisiana’s procedural laws do not extend to foreign jurisdictions, including the federal courts, any other interpretation of the article would produce the absurd result that prescription could, potentially, be indefinitely suspended — a result clearly at odds with the purpose of prescriptive | ,4statutes.[12] Cichirillo, 04-2894, 04-2918 at 9, 917 So.2d at 430 (“The fundamental *1020 purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof.”).
For example, as noted, Fed. Rule Civ. Proc. 23 does not require notice to class members of denial of class certification. Thus, in putative class actions filed in federal court, if certification is denied, no notice is provided (and certainly not such notice as would include a statement of the relevant delay periods under Louisiana law, as required by La. C.C.P. art. 596(B)). The individual claims of putative class members arising under Louisiana law would, thus, remain suspended indefinitely.
Clearly, such was not the intent of the legislature in enacting La. C.C.P. art. 596. Its provisions contemplate that prescription, once suspended, “begins to run again” at some point. La. C.C.P. art. 596(A). To interpret the article to provide for cross-jurisdictional tolling would not only subvert the purpose of prescriptive statutes, but would render much of the language of Article 596 meaningless when a class action is filed in a jurisdiction other than Louisiana. Our rules of statutory interpretation do not permit us to reach such a result.[13] The distinctions between | ^Louisiana class action procedure and federal class action procedure reinforce our conviction that the legislature, in linking the suspension of La. C.C.P. art. 596 to unique provisions of Louisiana law, did not intend to adopt “cross jurisdictional tolling.”
After examining the words of the article, we find, therefore, that the plain language of La. C.C.P. art. 596 dictates that the suspension of prescription provided therein applies only to “petition[s] brought on behalf of a class”[14] in the state courts of Louisiana.
While our conclusion in this regard is based on the statutory language, it is reinforced by an examination of the decisions of other jurisdictions that have addressed the issue of “cross-jurisdictional tolling” in the context of class action proceedings. Admittedly, the jurisprudence is not yet thoroughly developed. The majority of states have not had occasion to address the issue directly[15] and the states that have *1021 considered cross-jurisdictional tolling have been split in their acceptance of the doctrine and the rationale for their decisions.[16]
Instates which have adopted “cross-jurisdictional tolling” have generally done so on the basis of the rationale expressed in Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380, 763 N.E.2d 160 (2002). In Vaccariello, the Ohio Supreme Court cited two reasons for adopting cross-jurisdictional tolling. First, noting “that the bulk of Ohio’s class action rule, Civ.R. 23(A) through (E), is identical to the bulk of the federal class action rule, Fed. R.Civ.P. 23(a) through (e),” the court found that “a class action filed in federal court serves the same purpose as a class action filed in Ohio,” and “[wjhether a class action is filed or the federal court system, the defendant is put on notice of the substance and nature of the claims against it.” Id. at 162-63. Therefore, the court reasoned, “allowing the filing of a class action in the federal court system to toll the statute of limitations in Ohio does not defeat the purpose of the statute.” Id. at 163. Second, the court concluded, to hold “otherwise would encourage all potential plaintiffs in Ohio who might be part of a class that is seeking certification in a federal class action to file suit individually in Ohio courts to preserve their Ohio claims should the class certification be denied,” resulting in a “multiplicity of filings” that “would defeat the purpose of class actions.” Id.
Thus, the courts that have accepted cross-jurisdictional tolling have largely done so on the theory that, regardless of the jurisdiction in which it is accomplished, the defendant is put on notice of the claims and, as a result, the staleness of claims is not a genuine threat. As for the inevitable delays and vagaries in certification, the 117courts reason those would occur in any event. For these courts, there is no perceived incompatibility with the principles underlying statutes of limitation. However, unlike those cases such as Vaccariello, where Ohio’s class action rule was found to be virtually identical to federal law, Louisiana’s class action provisions differ from their federal counterpart in significant respects, creating the potential for disparate results depending on whether the class action is filed in Louisiana or federal court. To reiterate, because Louisiana requires notice to recommence the running of prescription, a putative class member in a federal class action in which certification is denied may have prescription on his or her claim suspended indefinitely, whereas a putative class member in a Louisiana class action will not be so fortunate. These vagaries, and the resultant potential for the indefinite suspension of prescription, are incompatible with the principles underlying prescription.
*1022 On the other hand, states which have rejected “cross-jurisdictional tolling” have generally done so on the basis of the rationale expressed in Portwood v. Ford Motor Co., 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102 (1998). In Portwood, the Illinois Supreme Court reasoned that while class action tolling in the same court system furthers judicial economy and is sound policy, tolling across jurisdictional lines “may actually increase the burden” on a state’s court system “because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule.” Id. at 1104. In addition to its concern with forum shopping, the Illinois court expressed concern with the delay occasioned by the pendency of a class action in federal court, noting that “because state courts have no control over the work of the federal judiciary, ... it would be unwise to adopt a policy basing the length of Illinois limitation periods on the federal courts’ disposition of suits seeking class certification.” Id. The court cited as an example of the dangers of forum shopping |isand the untoward delay occasioned by the pen-dency of a class action in federal court the facts of the case before it:
Most of the current plaintiffs originally filed suit against defendant in federal court in Washington, D.C., in 1981. After numerous orders and appeals, that suit was finally dismissed in March of 1990. Plaintiffs thereafter brought two similar suits, one in the local courts of the District of Columbia and the other in Pennsylvania state court. Each of those suits was also dismissed. The fourth incarnation of this action in Illinois thus follows three unsuccessful forays by plaintiffs elsewhere, spanning a period now approaching two decades.
Portwood, 233 Ill.Dec. 828, 701 N.E.2d at 1105 (emphasis added).
We believe the rationale of the courts rejecting “cross-jurisdictional tolling” is the one most consistent with our interpretation of the provisions of Louisiana’s tolling statute, La. C.C.P. art. 596, and is the rationale which most effectively balances the twin concerns of judicial efficiency and protection against stale claims. These cases, and particularly Portwood, underscore the unfairness to defendants, and to the state itself, of permitting another jurisdiction’s laws and the efficiency (or inefficiency) of its operations to control the commencement of a statute of limitations, potentially suspending it indefinitely into the future and, in the process, undermining the very purpose of statutes of limitation. As the Portwood court noted, any resultant blow to judicial efficiency occasioned by the necessity of protective filings in state court pending the resolution of the certification issue in federal court can be ameliorated by measures available to the state courts: “[Ejarly filings in state court by plaintiffs who are pursuing a class action elsewhere could not be entirely undesirable, as such filings would put that state’s court system on notice of the potential claim. If necessary, the state suit could be stayed pending proceedings elsewhere.” Portwood, 233 Ill.Dec. 828, 701 N.E.2d at 1105.
|19In sum, and for the reasons expressed herein, our analysis of La. C.C.P. art. 596 leads us to conclude that the legislature has rejected “cross-jurisdictional tolling” in class action proceedings. As a result, the Quinns cannot rely on the “recently dismissed” class action claim in the U.S. District Court for the Eastern District of Louisiana to establish a suspension of prescription as to the “individual” claims asserted in their lawsuit. The petition is prescribed on its face. Because there was no evidence introduced at the hearing on the prescription exception and the Quinns’ petition is prescribed on its face, the district court erred in denying the exception *1023 of prescription urged by Citizens. The judgment of the district court is, therefore, reversed and the exception of prescription is sustained.
In brief to this court, the Quinns anticipated the ruling of this court and argued that even if a federal class action would not serve to suspend prescription on the claims of putative class members under La. C.C.P. art. 596, they are putative class members in class action proceedings in state court and prescription on their claims is suspended by virtue of those proceedings. Citing La. C.C.P. art. 934 and Whitnell v. Menville, 540 So.2d 304 (La.1989), the Quinns assert this case should be remanded to the district court and they be allowed to amend their petition to allege facts to show their claims are not prescribed.
Citing Whitnell, in Wyman v. Dupepe Construction, 09-0817 (La.12/1/09), 24 So.3d 848, this court reiterated that “when a court sustains an exception of prescription, it shotild permit amendment of the plaintiffs pleadings if the new allegations which the plaintiff proposes raise the possibility the claim is not prescribed, even if the ultimate outcome of the prescription issue, once the petition is amended, is uncertain.” Id., 09-0817 at 1, 24 So.3d at 849. Considering the established jurisprudence, we find the Quinns’ request for a remand and permission |20to amend to be well-founded. Thus, we reverse the judgment denying the exception of prescription and sustain the exception, but remand this ease to the district court to allow the Quinns to amend their petition, if they can, within the delay allowed by the district court, to allege facts that would show their claims are not prescribed.
CONCLUSION
For the reasons stated herein, the judgment of the district court is reversed and judgment is rendered sustaining the exception of prescription; however, the case is remanded to the district court to allow plaintiffs an opportunity to amend and supplement their petition.
REVERSED; EXCEPTION OF PRESCRIPTION SUSTAINED; CASE REMANDED.

. The petition was originally filed on behalf of several unrelated plaintiffs. Pursuant to a consent judgment, the claims of all except the Quinns were dismissed without prejudice.

. See, 2006 La. Acts 739 and 802 (imposing special time limitations for claims related to hurricanes Katrina and Rita) discussed further infra.

.Identified by plaintiffs as "Orrill v. Citizens, 38 So.2d 457 (La.App 4th Cir.2010).”

. Because the premise which underpins the extension of the benefit of suspension of prescription to putative class members is that defendants in the class proceeding have been put on notice of the claims against them and can, thus, take appropriate action to preserve evidence and prepare a defense, it is crucial that there be identity or at least a close nexus between the claims. As Justice Powell cautioned in his oft-quoted concurrence in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983):
The [American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) tolling] rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.... [W]hen a plaintiff invokes American Pipe [tolling] in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit,” so that "the defendant will not be prejudiced.” ... Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under American Pipe and are barred by the statute of limitations. *1017 Id., 462 U.S. at 354-355, 103 S.Ct. 2392 (Powell, J., concurring).
Louisiana law honors this important caveat in La. C.C.P. art. 596, setting forth that suspension applies only with respect to claims "arising out of the transactions or occurrences described” in the class petition. La. C.C.P. art. 596(A).

. While the record indicates that certain documents and pleadings were appended to the plaintiffs’ memoranda filed in the district court, these documents were not offered and introduced into evidence at the hearing on the prescription exception. As we have previously ruled: "Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.” Denoux v. Vessel Management Services, Inc., 07-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88.

. While this represents a generous reading of the allegations, it is consistent with the well-settled principle that liberal rules of pleading prevail in Louisiana and that each pleading should be construed so as to do substantial justice. La. C.C.P. art. 865; Haskins v. Clary, 346 So.2d 193, 194 (La.1977).

. Cross-jurisdictional tolling has been defined as "a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the filing of a class action in another jurisdiction.” Primavera Familienstifung v. Askin, 130 F.Supp.2d 450, 515 (S.D.N.Y.2001), abrogated by Casey v. Merck & Co., Inc., 653 F.3d 95 (2nd Cir.2011).

. Although the issue is res nova in this court, the plaintiffs point to the court of appeal’s decision in Smith v. Transport Services Co., 10-1238 (La.App. 4 Cir. 5/4/11), 67 So.3d 487, as persuasive authority. In Smith, the court of appeal applied the provisions of La. C.C.P. art. 596 to a putative class action filed in federal court. Id. 10-1238 at 7-8, 67 So.3d at 491-92. However, it did so as a matter of course, without any analysis. Rather than serving as persuasive authority, the decision, especially the lengthy concurrence in part, dissent in part, illustrates the problems encountered when La. C.C.P. art. 596 is applied to a class action proceeding in a foreign jurisdiction. Id., 67 So.3d at 494 (Tobias, J., concurring in part, dissenting in part).

. As noted in Duckworth, under federal class action procedure, for example, there is no set procedure or form for requesting exclusion; rather, the court must simply send notice of class members describing "the time and manner for requesting exclusion.” Fed. Rule Civ. Proc. 23(c)(2)(B)(iv). Duckworth, 11-2835 at 18 and n. 9, 85 So.3d at 100.

. La. C.C.P. art. 592(A)(2) provides, in pertinent part:
If the proponent fails to file a motion for certification within the delay allowed by Subparagraph A(l), any adverse party may file a notice of the failure to move for certification. On the filing of such a notice and after hearing thereon, the demand for class relief may be stricken.
This provision has no counterpart in Fed. Rnle Civ Pror 73

. Subparagraph B of La. C.C.P. art. 596 was added by 2010 La. Acts 185, § 1.

. It is no answer to this absurd and patently unfair (to defendants) result that, as plaintiffs suggest, federal courts sitting in diversity ap-PL state law on limitations and tolling, Hensgens v. Deere & Co., 869 F.2d 879, 880 (5th Cir.1989), and, thus, would be constrained to adopt the notice requirements of La. C.C.P. art- 596- Under the Erie doctrine, federal courts sitting in diversity apply state substan-Uve law and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), citing Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While some *1020 aspects of La. C.C.P. art. 596 are undoubtedly substantive-for example, the provisions setting forth the circumstances under which prescription is suspended-other provisions, such as those dealing with the method and conditions of providing notice, are clearly procedural. The federal rules of procedure delineate when notice must be provided to class members and the federal courts have held that federal class action certification is controlled by federal procedural rules, including the notice requirements (or lack thereof). In re: Katrina Canal Breaches Litigation, 401 Fed.Appx. at 887, citing Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. 393, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010).

.Those rules instruct:
It is presumed every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. It is presumed the Legislature understands the effect and meaning of the words its uses in a statute. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject.
Louisiana Safety Ass’n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass’n, 09-0023, pp. 9-10 (La.6/26/09), 17 So.3d 350, 356 (citations omitted).

. While certainly not dispositive, the article's use of the word "petition” supports our conclusion in this regard. "Petition” is another term unique to Louisiana procedure. In federal court, for example, the pleading is referred to as a "complaint.” Fed. Rule Civ. Proc. 7(a)(1).

. While defendants argue that the majority of jurisdictions to consider the issue of cross-jurisdictional tolling have rejected it, many of *1021 the cases cited for this proposition are federal court decisions that decline to extend the doctrine before the state's highest court has had the chance to rule on it. See, e.g., Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir.2008); Wade v. Danek Med., Inc., 182 F.3d 281, 286-87 (4th Cir.1999).

. Although not an exhaustive review, cases from some of the states that have accepted cross-jurisdictional tolling for class actions include: Stevens v. Novartis Pharmaceuticals Corp., 358 Mont. 474, 247 P.3d 244 (2010); Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380, 763 N.E.2d 160 (2002); Staub v. Eastman Kodak Co., 320 N.J.Super. 34, 726 A.2d 955 (N.J.Sup.Ct.App.Div.1999); Hyatt Corp. v. Occidental Fire & Cas. Ins. Co., 801 S.W.2d 382 (Mo.Ct.App.W.D.1990); Lee v. Grand Rapids Bd. of Educ., 148 Mich.App. 364, 384 N.W.2d 165 (1986).
Cases from states rejecting cross-jurisdictional tolling include: Casey v. Merck & Co., 283 Va. 411, 722 S.E.2d 842 (2012); Ravitch v. Pricewaterhouse, 793 A.2d 939 (Pa.Super.2002); Maestas v. Sofamor Danek Group, Inc., 33 S.W.3d 805 (Tenn.2000); Portwood v. Ford Motor Co., 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102 (1998); Bell v. Showa Denko K.K., 899 S.W.2d 749 (Tex.App.1995).